## Ferree's Appeal. Ritter's Appeal.

1. The ordinance of the city councils of Philadelphia of December 31st 1862, which provides that before any contract for paving streets shall be entered into by the highway department, the person applying for the contract shall give notice of his intended application in two daily newspapers, &c., is repealed by the ordinance of December 23d 1874, reorganizing the highway department of said city.

2. The ordinance of 1874 takes away from the property holders all choice in the selection of the contractor, and vests the power in the chief commissioner of highways.[1]

January 23d 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Appeals from the Court of Common Pleas, No. 4, of *Philadelphia county:* Of July Term 1878, Nos. 11 and 12.

Appeals of Abraham Ritter and Samuel P. Ferree, administrators of James B. Ferree, deceased, from the decree of the court dismissing the exceptions to and confirming the report of the auditor appointed to distribute the fund arising from a sheriff's sale of real estate.

Hannah R. Vogdes, sole executrix of John R. Vogdes, deceased, entered a judgment against James B. Ferree on a warrant of attorney annexed to a bond accompanying a mortgage secured on a lot of ground in the Twenty-fourth ward of the city of Philadelphia, and sold the same at sheriff's sale, by virtue of proceedings had on this judgment. A portion of the proceeds of this sale were paid into court and an auditor appointed to distribute the same.

These appeals are from the distribution ordered by the court of this fund.

The other material facts will be found in the following opinion of Elcock, J., in the court below:

"The fund for distribution by the auditor was raised from sale by the sheriff under our writ, of certain real property, situate on Sycamore street, formerly called Silverton avenue, West Philadelphia. A claim was presented before the auditor by the city of Philadelphia to the use of William A. Shipps, against the defendant, amounting to $1194.57, for the cost of paving the highway with rubble pavement in front of the property sold.

"The work was done under authority of an ordinance, approved December 15th 1874, which directs the chief commissioner of highways to enter into a contract with a competent paver for the paving of, inter alia, said streets, but requires no preliminary act upon the part of the chief commissioner or any one else.

"The auditor has refused to allow the claim, upon the ground that there was no preliminary advertisement before the awarding of the contract to said William A. Shipps, as required by the ordinance, approved December 31st 1862, which is as follows:

[1] See City of Philadelphia, to use, *v.* P. & R. Railroad Co., *ante*, 314.—REP.

[Ferree's Appeal.]

" ' Hereafter, before any contract for paving any street or streets shall be entered into by the highway department, the person or persons applying for such contract shall give notice of such application in two daily papers having the largest circulation, by three consecutive insertions, at least two weeks prior to the making of such application ; such notice to set forth :

" ' 1. The name of the contractor or contractors.

" ' 2. The locality of the space or spaces intended to be paved, with the length of such space in lineal feet.

" ' 3. The name and residence of each person signing for contractor, together with the number of feet owned or represented by each person so signing fronting on said streets.

" ' 4. To such notice shall be added an invitation to the owners of property to meet at the department of highways, at a certain hour on a given day, to show cause, if any, why such contract should not be awarded to the applicant.'

" The important question now raised is, whether this ordinance was not repealed by the ordinance reorganizing the highway department, approved December 23d 1874.

" By section 2 of that ordinance, ' from and after January 1st 1875, the building and repairing of all bridges, culverts, sewers and inlets, the opening, grading, curbing, paving, repaving and repairing of all streets, roads, lanes, alleys and other highways of the city of Philadelphia, shall be under the control, supervision and management of the chief commissioner of highways of said city.'

" By section 10 the owners of property desiring to have the streets which shall pass through their property paved, shall apply to councils by petition, to which shall be attached a certificate of the district surveyor, that the petitioners are a majority of the owners of property between the points named. After an ordinance shall be passed for the paving of any street, it shall be the duty of the chief commissioner to award the contract for the same to a practical paver or pavers, regularly engaged in such business, and known to be such : Provided, the security for the same shall be the same as is now regulated by Act of Assembly : Provided, that any contractor failing to perform his work in accordance with the terms of his contract, shall be deemed a defaulter, and no bid shall thereafter be received from, or contract awarded to, such defaulting contractor.

" And by section 11, all ordinances or parts of ordinances, inconsistent herewith, be and the same are hereby repealed.

" The object of the ordinance of 1862 was to secure a competent paver to do the work, instead of awarding it to some person who might bid low enough in price, but be utterly ignorant of the mode of performing the work or of the materials to be used in it.

" The necessity for the advertising under the ordinance of 1862 is therefore done away with, when, under the ordinance of 1874, it is made the duty of the chief commissioner to award the contract

[Ferree's Appeal.]

to a practical paver or pavers, regularly engaged in such business, and known to be such. And further, the alleged important facts stated in the ordinance of 1862 (much of it repealed by an ordinance of March 24th 1871), made necessary to advertise, are by the ordinance of 1874, directed to be set forth in the certificate of the district surveyor, which shall be attached to the petition to be presented to councils.

"The ordinance of 1874 therefore takes away from the property owners any choice in the selection of a contractor, and vests all power in the chief commissioner, who may enter into a contract immediately after the approval of the ordinance. Then why advertise under the form directed in the ordinance of 1862? It creates a new system of awarding contracts; directs by whom they shall be awarded, to whom as a particular class they shall be awarded, and the facts which petitioners for paving streets must lay before councils, where councils do not act of their own motion. It accomplishes the same object as the ordinances of 1862 by a different method.

"The inconsistency and repugnancy of the ordinance of 1862 to that of 1874, may be instanced where a contract had been awarded by the chief commissioner, since January 1875, to some competent paver, who immediately sets to work under his contract, and perhaps completes it in ten days. The contract having been awarded him, it would be an extraordinary rule of law to require him to advertise in the form of the ordinance of 1862, to notify property owners to assemble and show cause, within two weeks from the approval of the ordinance, why his contract should not be awarded him. It can hardly be supposed that after the contract had been awarded that any one else would be so frenzied in the support of any two newspapers as to invest money in any such advertisement; whilst the meeting of property owners, without aim or power, would be without cause to show.

"We think there cannot be a clearer repeal of a precedent affirmative statute. There is such clear legislative intention shown in the words of the later ordinance to repeal the former that it comes within the rule of interpretation of statutes as 'clearly repugnant and inconsistent.'

"The case of City v. Fell, 31 P. F. Smith 58, has been strongly relied upon by the learned auditor, but, under the present views we take of the ordinance of 1862, it can have little application, as that case was tried before the passage of the ordinance of 1874, and the work performed in 1870; besides, the work was performed under a special ordinance, the non-compliance with the terms of which destroyed the claim for the work.

"To maintain the doctrine ruled against this claim would produce intense hardship, for every contract, awarded for paving of streets in Philadelphia since January 1875, has been awarded in the

[Ferree's Appeal.]

view of the repeal of the ordinance of 1862; and to at one blow destroy every lien and annul every contract thus entered into, notwithstanding the work was honestly done, would be paving the way to a repudiation most immoral and terrible in extent. *Salus populi suprema lex.*

"The exceptions are sustained, and the report is referred back to the auditor for redistribution, in accordance with this decision."

*M. Hampton Todd* and *Edward S. Harlan,* for appellants.— Compliance with the requisites of the ordinance December 31st 1862 is necessary to create an obligation on the property owner to pay for paving: Fell *v.* Philadelphia, 31 P. F. Smith 58. This principle is equally applicable to paving contracts, whether ordinances authorizing them do or do not require the paver to be selected by the lot-holders. The property owner has the right in both cases to invoke the aid of the commissioner's discretion in the selection of the paver.

A statute will not be repealed by a more modern one, unless the latter expressly negative the former, or unless the provisions of the two statutes are manifestly repugnant: Broom's Legal Maxims (7 Am. ed.) 27; Rix *v.* Borton, 12 Ad. & E. 470; Potter's Dwarris 156; Street *v.* The Commonwealth, 6 W. & S. 209; Brown *v.* The County Commissioners, 9 Harris 37. A general statute without negative words will not repeal a previous statute which is special, although the provisions be different: Brown *v.* The County Commissioners, *supra;* Rounds *v.* Waymart Borough, 31 P. F. Smith 395; Wright *v.* Vickers, Id. 122.

*Henry Reed* and *Wm. W. Wiltbank,* for appellees.—The ordinance of 1862 was repealed before the ordinance was passed under which Shipps was employed by the commissioner. Millions of dollars' worth of municipal improvements have been made without any question on the part of those who have paid for them of the fact of this repeal. The new Constitution of the state, of 1874, necessitated new legislation for the municipalities of the Commonwealth. This produced the Act of Assembly of 19th May 1874, which led to a reorganization of the department of highways in Philadelphia. This was effected by the ordinance of December 23d 1874, which expressly swept away all prior municipal legislation inconsistent therewith. The ordinance of 1874 made it the duty of the chief commissioner himself to select a competent paver, without any reference to the property owners.

The facts required to be set forth by the applicant under the ordinance of 1862, are now required to be set forth by the district surveyor upon certificate.

The ordinance of 1874 "creates a new system of awarding contracts. * * * "It accomplishes the same object as the ordinance

[Ferree's Appeal.]

of 1862 by a different method." Under it the chief commissioner may give a contract at once. How then could a competent paver, selected duly by him, be required to advertise for two weeks, in order that strangers might show cause why that should not be done which had already been done ?

The judgment of the Supreme Court was entered February 17th 1879,

PER CURIAM.—We affirm the decree in these appeals upon the opinion of the learned judge below, sustaining the exceptions to the auditor's report.

> Decree affirmed and appeals dismissed at the cost of the appellants.